**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

IN RE APPLICATION OF CONRAD
SMITH, *ET AL.* FOR ACCESS TO
GRAND JURY PROCEEDING
MATERIALS IN <u>UNITED STATES
V. TRUMP</u>

Misc. Case No. 24-165 (JEB)

---

## <u>MEMORANDUM OPINION</u>

Conrad Smith and six other current or former U.S. Capitol Police Officers have sued

President Donald J. Trump and a host of other individuals and entities for their alleged role in

instigating the January 6 attack.  See <u>Smith v. Trump</u>, No. 21-2265, ECF No. 89 (Am. Compl.),

¶¶ 1, 11–45, 166–221 (D.D.C. Dec. 3, 2021).  These Officers claim that they have been stymied

in obtaining discovery in that proceeding before another district judge.  They have sought

material from a number of non-defendants — three entities and five individuals — who have

refused to produce responsive information or in some cases flatly ignored all discovery requests.

<u>See</u> ECF No. 1 (Appl.) at 1–2, 8–10.  The Officers believe that the non-defendants at one time

testified before or provided material to the grand jury that returned an indictment against then-

former President Trump in the now-dismissed criminal case against him.  The Officers have thus

filed the instant Application before this Court, seeking access to all testimony, documents, and

other material obtained from the non-defendants through the grand jury.  See <u>id.</u> at 8–10; ECF

No. 1-1 (Proposed Order) at 1; ECF No. 6 (Reply) at 3 n.3 (amending scope of request); <u>see also</u>

LCrR 57.14(b) ("Chief Judge shall . . . hear and determine all matters relating to proceedings

before the grand jury.").

Applicants argue that such access is warranted under Federal Rule of Criminal Procedure 6(e)(3), which permits courts to release grand-jury material to a party that shows, among other things, that it needs the material in order "to avoid a possible injustice in another judicial proceeding." Douglas Oil Co. of Cal. v. Petrol Stops Nw., 441 U.S. 211, 222 (1979). The Court concludes that while they may eventually be able to do so, Applicants have not yet made such a showing, and, even if they could, their request is currently overbroad. The Court will therefore deny their Application. They may try their luck again if, as fact discovery in the civil case winds down, the non-defendants have remained unresponsive to discovery requests.

## I.     Background

Applicants claim that they "suffered significant physical, psychological, and emotional injuries" when defending the peaceful transition of power on January 6. Smith v. Trump, No. 21-2265, Am. Compl., ¶ 10. That day, the Officers say, they "were violently assaulted, spat on, tear-gassed, bear-sprayed, subjected to racial slurs and epithets, and put in fear for their lives." Id., ¶ 1. Seeking redress for their injuries, they sued Trump, nineteen other individuals, and six entities, alleging that those defendants had in various ways caused the January 6 attack. See id., ¶¶ 2–10. Applicants' case is one of several seeking to hold the former and current President and others civilly liable for their alleged participation in the attack. See Lee v. Trump, No. 21-400, ECF No. 78 (Order) (D.D.C. Feb. 16, 2024) (leading case consolidating civil lawsuits against Trump and others for purposes of, *inter alia*, immunity-related and merits discovery).

Trump and many of the other defendants moved to dismiss Applicants' suit, and Judge Amit Mehta, the district judge to whom the case was assigned, dismissed several of the claims. See Smith v. Trump, 2023 WL 417952, at *10–11 (D.D.C. Jan. 26, 2023), aff'd, 2023 WL 9016458 (D.C. Cir. Dec 29, 2023). As a result, Applicants' core remaining federal claims allege

2

that, by "causing the mass attack on the Capitol," id., Am. Compl., ¶ 165, the defendants or their agents engaged in various overlapping conspiracies to: "prevent, by force, intimidation, or threat," the Officers from "discharging [their] duties"; to "induce by like means" the Officers to leave their place of duty; and to "injure" the Officers "on account of [their] lawful discharge of [their] duties."  42 U.S.C. § 1985(1); Smith v. Trump, No. 21-2265, Am. Compl., ¶¶ 167–72; see also Appl. at 6.  In a companion case, the D.C. Circuit held that although Trump enjoys immunity for acts he took "in his official capacity as President," he could be held civilly liable for any conduct on January 6 taken "in his unofficial capacity as presidential candidate." Blassingame v. Trump, 87 F.4th 1, 5 (D.C. Cir. 2023) (emphasis added).

In the spring of 2023, the parties entered immunity-related and fact discovery, the timelines for which have since been extended several times.  See, e.g., Smith v. Trump, No. 21-2265, ECF Nos. 213 (Scheduling Order), 266 (Scheduling Order), 292 (Scheduling Order), 333 (Order).  While immunity-related discovery largely closed last October, see Lee v. Trump, No. 21-400, ECF No. 131 (Order), fact discovery in Applicants' case continues through July 28, 2025.  See Smith v. Trump, No. 21-2265, Minute Order of December 19, 2024.

Applicants assert that they have thus far been unsuccessful in obtaining discovery from several non-defendants.  They seek material from three political action committees — Save America PAC, Trump Victory, and Make America Great Again Committee — that they suspect helped finance the Save America Rally at which Trump spoke prior to the attack on the Capitol. See Reply at 3; see generally Blassingame, 87 F.4th at 7–9.  Those PACs, according to Applicants, have together produced a single document in response to discovery requests.  See Appl. at 8–9.

Applicants have also sought discovery from the following five individuals, all of whom have apparently been unresponsive.  See id. at 9–10.  First, through her role in a group called Women for America First, Cynthia Chafian allegedly helped organize the Rally, including by securing the permit for it.  See id. at 9; Reply at 3–4.  In Applicants' telling, Caroline Wren also helped organize the Rally and served as a liaison with other organizers, the Proud Boys and Oath Keepers, the Trump Campaign, and Trump himself.  See Appl. at 9–10; Reply at 4.  Applicants believe Hannah Salem helped coordinate logistics and communications for the Rally while also serving as a member of the Campaign.  See Appl. at 9; Reply at 4.  They posit that Daniel Scavino helped manage social media and communications during the first Trump Administration and can therefore shed light on Trump's "intentions" around allegedly advancing the lie that the 2020 election was stolen.  See Reply at 5.  Finally, Applicants suspect that Rudolph Guiliani has information concerning the "legal strategy" that Trump pursued leading up to the Rally and ensuing attack.  Id.

Applicants have subpoenaed all three PACs plus Chafian and Salem, see Appl. at 8–9, and have filed motions in separate courts seeking to compel Guiliani, Scavino, and Wren to comply with subpoenas.  See Smith v. Giuliani, No. 24-351 (S.D.N.Y. Aug. 1, 2024); Smith v. Scavino, No. 24-566 (S.D.N.Y. Dec. 9, 2024); Smith v. Wren, No. 24-81074 (S.D. Fla. Sept. 5, 2024).

Frustrated by what they perceive to be the non-defendants' obstructionism, the Officers filed this Application seeking "[d]ocuments, testimony, and any other material obtained" from them by the grand jury that indicted Trump.  See Proposed Order at 1; Reply at 3 n.3; see also United States v. Trump, No. 23-257, ECF. No. 1 (Indictment) (D.D.C. Aug. 1, 2023); id., ECF No. 283 (Order) (Nov. 25, 2024) (dismissing Superseding Indictment returned August 2024); id.,

ECF No. 285 (Order) (Dec. 6, 2024) (clarifying original Indictment also dismissed). Applicants suggest that, to allay secrecy concerns, the grand-jury material could be released only to their attorneys pursuant to the protective order in effect in their lawsuit. See Appl. at 8, 11; Smith v. Trump, No. 21-2265, ECF No. 294 (Protective Order) at 4 (May 15, 2024) (restricting especially "sensitive" discovery material to "Attorneys' Eyes Only"). While the Government opposes the Officers' Application, see ECF No. 5 (Opp.), neither Trump nor the allegedly unresponsive non-defendants have made their views known to the Court.

## II.    Legal Framework

In general, "the grand jury context presents an unusual setting where privacy and secrecy are the norm." In re Grand Jury Subpoena, Judith Miller, 438 F.3d 1141, 1150 (D.C. Cir. 2006) (quoting In re Sealed Case, 199 F.3d 522, 526 (D.C. Cir. 2000)). Witnesses "enter the grand jury room alone . . . . No judge presides and none is present." In re Motions of Dow Jones & Co., 142 F.3d 496, 498 (D.C. Cir. 1998). Grand-jury secrecy vindicates several distinct but "vital interests," including "(1) preserving the willingness and candor of witnesses called before the grand jury; (2) not alerting the target of an investigation who might otherwise flee or interfere with the grand jury; and (3) preserving the rights of a suspect who might later be exonerated." McKeever v. Barr, 920 F.3d 842, 844 (D.C. Cir. 2019) (citing Douglas Oil, 441 U.S. at 219).

Through Federal Rule of Criminal Procedure 6(e), Congress "codifie[d] the traditional rule of grand jury secrecy." United States v. Sells Eng'g, Inc., 463 U.S. 418, 425 (1983). The Rule imposes secrecy requirements on certain persons, see Rule 6(e)(2), but then carves out limited exceptions to that general requirement. See Rule 6(e)(3)(A)–(E). In this Circuit, a court lacks any "inherent," freestanding "authority" to release matters occurring before the grand jury,

meaning that it may permit disclosure only if the matter falls within one of Rule 6(e)(3)'s enumerated exceptions. McKeever, 920 F.3d at 844–50.

Relevant here is the exception found in Rule 6(e)(3)(E)(i), which provides that a court "may authorize disclosure — at a time, in a manner, and subject to any other conditions that it directs — of a grand-jury matter . . . preliminarily to or in connection with a judicial proceeding." Even if a party can establish that the materials sought are needed for "pending or anticipated" litigation, United States v. Baggot, 463 U.S. 476, 480 (1983), the Supreme Court has held that the party must also show a "particularized need for [the] materials before any disclosure will be permitted." Sells Eng'g, 463 U.S. at 443. The Rule's "judicial proceeding" requirement, then, "imposes" a threshold "criterion governing the kind of need that must be shown," while the Supreme Court's "particularized need test is a criterion of degree." Baggot, 463 U.S. at 480.

To satisfy the latter test, the party seeking disclosure must make a "strong showing" (1) "that the material [it] seek[s] is needed to avoid a possible injustice in another judicial proceeding," (2) "that [the party's] request is structured to cover only material so needed," and (3) "that the need for disclosure is greater than the need for continued secrecy." Sells Eng'g, 463 U.S. at 443 (quoting Douglas Oil, 441 U.S. at 222–23). "Such a showing must be made even when" material is sought from a grand jury that "has concluded its operations," but "as the considerations justifying secrecy become less relevant," the party seeking grand-jury material "will have a lesser burden in showing justification." Douglas Oil, 441 U.S. at 222, 223. Indeed, the particularized-need "standard is a highly flexible one, adaptable to different circumstances and sensitive to the fact that the requirements of secrecy are greater in some situations than in others." Sells Eng'g, 463 U.S. at 445. Whether "to disclose grand jury materials" pursuant to

Rule 6(e) "is committed to the substantial discretion of the district court, and is subject to reversal only if that discretion has been abused." In re Sealed Case, 801 F.2d 1379, 1381 (D.C. Cir. 1986) (citing Douglas Oil, 441 U.S. at 223); see United States v. John Doe, Inc. I, 481 U.S. 102, 116–17 (1987); McKeever, 920 F.3d at 844.

**III.    Analysis**

As no one disputes, Applicants plainly seek the grand-jury material "in connection with a judicial proceeding" — the threshold requirement of Rule 6(e)(3)(E)(i). But Applicants have not, at this point, succeeded in showing a "particularized need" for the material. Sells Eng'g, 463 U.S. at 443. Specifically, they have not (yet) established that the material is "needed to avoid a possible injustice" in their lawsuit, and, even assuming that the material were so needed, their request is overly broad. See Douglas Oil, 443 U.S. at 222. Because their Application fails on those two prongs of the particularized-need test, the Court need not address the third.

A.    Necessity

Although neither the Supreme Court nor this Circuit has expressly held as much, the former's decisions imply that a party can establish that access to grand-jury material is necessary to avoid a possible injustice when the material is central to litigating a case and the party has exhausted the normal discovery process to no avail. That conclusion follows, in the first instance, from Sells. There, the Supreme Court reiterated that a mere desire to avoid the "time and expense" of "ordinary discovery" cannot "justify a breach of grand jury secrecy." 463 U.S. at 431 (collecting cases). In the same breath, however, it explained that if "ordinary discovery is insufficient for some reason," a party "may request disclosure" pursuant to Rule 6(e)(3)(E)(i). See id. (emphasis added). The Supreme Court later elaborated, moreover, that "[w]hile the possibility of obtaining information from alternative sources is certainly an important factor,"

there is <u>not</u> "a *per se* rule against disclosure" even when "all of the relevant material could [be] obtained through [] civil discovery tools." <u>John Doe, Inc. I</u>, 481 U.S. at 116. Instead, as noted, the test is "a highly flexible one," and courts have "wide discretion" to determine when "the equities lean[] in favor of disclosure." <u>Id.</u> at 116–17 (quotation marks omitted).

Unsurprisingly, then, other courts have permitted disclosure when the discovery process cannot or will not yield material that might determine the outcome of a civil case. The Eighth Circuit, for instance, considered a request for documents that plaintiffs in a lawsuit argued were "unavailable through any other channel of discovery." <u>In re Grand Jury Proc. Relative to Perl</u>, 838 F.2d 304, 307, 308 (8th Cir. 1988). The appeals court concluded that because the plaintiffs needed those documents "in order to meet [their] burden of proof" such that their "case would be significantly hampered without [the] material," they had sufficiently shown that access was necessary to avoid a possible injustice. <u>See id.</u> at 308; <u>see also</u> <u>Fed. Election Comm'n v. Rivera</u>, 333 F.R.D. 282, 287 (S.D. Fla. 2019) (authorizing disclosure of documents because, despite plaintiff's "diligent[]" discovery efforts, defendant was unable or unwilling to produce them).

Courts have also authorized disclosure when the discovery process was "insufficient," <u>Sells Eng'g</u>, 463 U.S. at 431, because one-time grand-jury witnesses were subsequently obstructionist during discovery in a related civil suit. In a Fifth Circuit case, the district court released the transcripts from five grand-jury witnesses who had "stonewall[ed]" in depositions taken for a follow-on lawsuit (against their employer). <u>See</u> <u>In re Corrugated Container Antitrust Litig.</u>, 687 F.2d 52, 54 (5th Cir. 1982). The appeals court affirmed. Disclosure of the transcript from one witness who claimed memory loss was warranted because it contained material that was highly "relevant" to the trier of fact but would be "otherwise unavailable" "despite the . . . plaintiffs' intensive discovery efforts." <u>Id.</u> at 55. Likewise for the other four witnesses

who, after testifying before the grand jury under a grant of immunity, invoked or threatened to invoke the Fifth Amendment in the civil depositions. See id. at 56. They were "key witnesses" for the civil case, and their unwillingness to talk led the district court to conclude — and the circuit to agree — that "diligent discovery . . . has not, will not, and cannot succeed in presenting sufficient facts to a jury to enable it to make any kind of informed decision as to the issues in this case." Id.; see also id. at 57 (collecting cases in which invocations of Fifth Amendment justify disclosure).

The Government does not disagree that piercing grand-jury secrecy can be warranted when ordinary discovery, pursued vigorously, proves incapable of yielding material that is key to the just adjudication of a civil case. Instead, it contends that Applicants have not shown that this is such a case. See Opp. at 6–8. The Court agrees, although for different reasons.

The Government maintains that Applicants seek the grand-jury material merely "to avoid the inconvenience and burden of continuing to pursue ordinary discovery channels." Id. at 6. That is hardly a fair characterization. It is apparent that the Officers are not experiencing — and seeking to circumvent — either the routine "frustration" or the predictable "time and expense" associated with ordinary discovery. See id. at 7 (quotation marks omitted). Instead, they have diligently pursued discovery — and indeed initiated litigation to compel discovery — but have thus far been stonewalled by the PACs and individuals. See Appl. at 8–10; Reply at 7–9. And, as Applicants note, they seek grand-jury material only from entities or individuals who "have not cooperated in discovery." Reply at 6.

Even so, two reasons prevent this Court from concluding that Applicants have met their burden. First, their request is premature. As noted, fact discovery in their lawsuit is presently not scheduled to close until the end of July, over four months from now — and that deadline may

well be extended, as it has been several times before.  See *supra* p. 3.  In addition, the motions to compel compliance (against Wren, Scavino, and Giuliani) have not yet been ruled on, and Applicants recently notified the court hearing the Scavino case that he had agreed to produce some responsive documents.  See Smith v. Scavino, No. 24-566, ECF No. 18 (Letter) at 1 (S.D.N.Y. Mar. 12, 2025) (explaining parties "are continuing negotiations" and asking to postpone pre-motion conference "[i]n light of this progress").  The Court therefore cannot say definitively that "ordinary discovery" has been "insufficient," Sells Eng'g, 463 U.S. at 431, even if it has thus far proven so.

Applicants are certainly justified in suspecting that the non-defendants will continue to be unresponsive.  Chafian, for example, has reportedly rebuffed Applicants' entreaties to negotiate more limited discovery, see Reply at 8, and she notably ignored a subpoena from the Congressional committee investigating the January 6 attack.  See H. Select Comm. to Investigate the Jan. 6th Attack on the U.S. Capitol, Deposition of Cynthia "Cindy" Chafian (No-Show) at 5–6 (Oct. 28, 2021), https://perma.cc/8WBS-JF5A.  Additionally, each of the PACs has apparently "informed Applicants [that] it will not be engaging in further discovery negotiations."  Reply at 7.  Because fact discovery is still ongoing, however, the Court cannot say that it will ultimately fail to provide Applicants the material they seek.

The second problem is that Applicants have not shown that all of the requested grand-jury material is integral to their lawsuit.  They contend that the material is necessary to enable the district court to resolve important issues — namely their claims and Trump's immunity defense.  See Appl. at 10–11; Reply at 2–6.  Were that true, it would likely constitute a particularized need: "[D]isclosure of grand jury information when necessary to avoid misleading a trier of fact is a paradigmatic showing of particularized need."  In re Appl. of Comm. on Jud., U.S. H. of

<u>Reps., for an Ord. Authorizing Release of Certain Grand Jury Materials</u>, 414 F. Supp. 3d 129,

178 (D.D.C. 2019) (quotation marks omitted) (citing <u>Douglas Oil</u>, 441 U.S. at 222 n.12), <u>aff'd</u>,

951 F.3d 589 (D.C. Cir. 2020), <u>vacated as moot sub nom.</u> <u>Dep't of Just. v. H. Comm. on the Jud.</u>,

142 S. Ct. 46 (2021) (Mem.).  Applicants have not yet clearly explained, however, why <u>all</u> of the

material they seek bears directly on essential aspects of the case.

  Take, as an example, the material Salem purportedly possesses.  As noted, Applicants

posit that she coordinated logistics and communications for the Rally while simultaneously

working for the Trump Campaign.  <u>See</u> Appl. at 9.  Specifically, they assert that "she handled

press credentials for the Rally and directly communicated with" two of its "planners," <u>id.</u>, and so

"likely has relevant information regarding who was planning the Rally and for what purpose."

Reply at 4.  Applicants therefore contend — without further elaboration — that the documents

she ostensibly "holds" are "relevant to both Applicants' conspiracy claim and the immunity

question."  Appl. at 9; <u>see also</u> Reply at 4.

  The Court can surmise why that might be true, but such a "conclusory" assertion, resting

moreover on a rather vague description of the material at issue, is insufficient to satisfy the "very

demanding" standard of showing that an injustice would result but for access to the material.

<u>See</u> <u>United States v. Sutton</u>, 2023 WL 5827718, at *3 (D.D.C. Sept. 8, 2023) (quotation marks

omitted); <u>see, e.g.</u>, <u>United States v. Wilkerson</u>, 656 F. Supp. 2d 22, 35 (D.D.C. 2009)

(particularized-need requirement unsatisfied where criminal-defendant applicant had not

"articulated" how grand-jury material would bear on one of his defenses), <u>aff'd</u>, 966 F.3d 828

(D.C. Cir. 2020).  As the Supreme Court explained in one of the cases that yielded the

particularized-need test, showing the material's "relevancy and usefulness" is not enough; the

applicant must show that "without" the material, her case "would be greatly prejudiced" or "an

injustice would be done." United States v. Procter & Gamble Co., 356 U.S. 677, 682 (1958); see Douglas Oil, 441 U.S. at 221–22 (quoting this passage of Procter & Gamble); see also United Kingdom v. United States, 238 F.3d 1312, 1321 (11th Cir. 2001) (holding that "relevance or possible relevance" of material insufficient to show particularized need).

To be sure, Applicants' contention regarding the material Salem purportedly possesses amounts to more than the kind of "speculation or unsupported assumption[]" that "courts have made clear" cannot justify disclosure. United States v. Apodaca, 287 F. Supp. 3d 21, 47 (D.D.C. 2017). This Court, furthermore, recognizes that Salem's apparent obstructionism hinders Applicants' ability to identify the scope and nature of material she possesses, see Reply at 4 (noting Applicants' efforts to use "third-party discovery" to triangulate relevant material in Salem's possession), which in turn hampers their ability to granularly articulate how the material bears on core components of the case. For that reason, Applicants may not face the same explanatory burden that might apply in other contexts. See John Doe, Inc. I, 481 U.S. at 116–17 (courts have "wide discretion" to determine when "equities" favor disclosure); but see United Kingdom, 238 F.3d at 1321 (rejecting application because "breadth of Appellants' request, while understandable to some extent given their lack of access to the materials, ma[de] it virtually impossible for them to demonstrate that [all] sought-after grand jury items" merited disclosure). Before this Court could conclude that disclosure is warranted, however, Applicants would have to develop more fully how and why the material they seek from Salem (and some of the other non-defendants) affects weight-bearing components of their lawsuit. See United States ex rel. Stone v. Rockwell Int'l Corp., 173 F.3d 757, 760 (10th Cir. 1999) (holding particularized-need standard prevents releasing grand-jury material "for the purpose of a fishing expedition or to satisfy an unsupported hope of revelation of useful information").

In sum, it is too early to say whether ordinary discovery will produce the requested material, see Sells Eng'g, 463 U.S. at 431, and Applicants have furthermore fallen short of demonstrating that all such material is necessary to the full and proper adjudication of their lawsuit.  At this time, then, they have not established that piercing grand-jury secrecy is "needed to avoid a possible injustice."  Douglas Oil, 441 U.S. at 222.

B.  Breadth

Applicants do not satisfy the particularized-need test for a second reason.  Even if one assumed that the requested material is needed to avoid an injustice, their "request" is not "structured to cover only [that] material."  Id. at 222–23.

Applicants contend that it is properly narrow because they seek grand-jury material only from the three PACs and five individuals "who likely have information relevant to Applicants' claims."  Reply at 2–3.  But the Officers seek all "[d]ocuments, testimony, and any other material obtained" from these entities and individuals.  See Proposed Order at 1 (emphasis added); Reply at 3 n.3.

As an initial matter, such a request for "any" and "all" material is unlikely to "pass muster" in this context.  See In re Appl. for Access to Grand Jury Materials Relating to Hack of Democratic Nat'l Comm., No. 23-133, ECF No. 10 (Mem. Op.) at 10 (D.D.C. Mar. 8, 2024).  As the Supreme Court has explained, the requirement that a party show "with particularity" a need for grand-jury material serves to ensure that grand-jury secrecy is lifted only "discretely and limitedly."  Douglas Oil, 441 U.S. at 221 (emphasis added) (quoting Procter & Gamble, 356 U.S. at 683); accord In re Capitol Breach Grand Jury Investigations Within D.C., 339 F.R.D. 1, 23–24 (D.D.C. 2021).  Indeed, that Court has suggested that typically only "discrete portions" of grand-jury transcripts will merit disclosure.  See Douglas Oil, 441 U.S. at 219–20.  It is therefore hard

to see how such an expansive, "blanket request" as Applicants' can "be described as the kind of particularized" one that the Supreme Court "require[s] for the production of otherwise secret information."  United Kingdom, 238 F.3d at 1321.

In any event, by its own terms, Applicants' request is overly broad.  In their telling, the Officers seek the grand-jury material at issue because they believe it will go to show the intersecting conspiracies among the defendants to instigate and perpetuate the January 6 attack. See Appl. at 6, 9, 10; Smith v. Trump, No. 21-2265, Am. Compl., ¶¶ 166–72.  Applicants thus focus on the non-defendants' roles in financing, organizing, and promoting the Rally that preceded the attack, as well as their participation in the pre-January 6 legal and communications strategy, which Applicants believe sowed the seeds for the literal assault on the electoral certification.  See Appl. at 8–10; Reply at 5.  As the Government points out, however, the Application is not limited to material relevant to those specific issues.  See Opp. at 10.  Instead, the Officers seek all material — regardless of subject matter — that the non-defendants provided the grand jury.  The scope of the request and its underlying justification thus do not overlap.  It is no answer to say, as Applicants do, that the three PACs and five individuals "are only a narrow subset" of the people who provided material to the grand jury or were interviewed by prosecutors.  See Reply at 5.  The particularized-need test does not turn on such fractional math.

* * *

In sum, Applicants have not yet shown that the requested material is necessary to avoid a possible injustice in their January 6-related lawsuit; their request, moreover, is overbroad. Because they fail the particularized-need test on those two grounds, the Court need not address the third factor — i.e., whether their "need for disclosure is greater than the need for continued secrecy."  Douglas Oil, 441 U.S. at 222–23.  In any event, the Court could not balance the

14

countervailing "need[s]" without a fuller — indeed, sufficient — understanding of why the material at issue is "needed" by Applicants "to avoid a possible injustice." Id. at 222; see *supra* Section III.A.

## IV.    Conclusion

For the foregoing reasons, the Court will deny the Application but allow Applicants to submit another one no sooner than 120 days from today (*i.e.*, July 16, 2025).  At that time, the present deadline for fact discovery in Applicants' lawsuit will be fast approaching, so it will presumably be clearer to Applicants and this Court whether the discovery process has borne or will bear any fruit.  A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date: March 18, 2025